United States District Court
Southern District of Texas
**ENTERED**
March 31, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BENNY J. HAMMOND, <br> (TDCJ-CID #1513422) | § § § | |
| Plaintiff, | § § § | |
| vs. | § | CIVIL ACTION NO. H-16-3603 |
| BRYAN COLLIER, *et al.*, | § § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

Benny J. Hammond, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, ("TDCJ-CID") sued in November 2016, alleging civil rights violations resulting from a denial of due process. Hammond, representing himself and without prepayment of the filing fee, sues Bryan Collier, Executive Director of the TDCJ-CID; David G. Gutierrez, Chairman of the Texas Board of Pardons and Paroles; and Bobby Lumpkin, Director of the Manufacturing and Logistics Division of the TDCJ-CID.

Hammond suggests that he should be compensated in money for his good time, in recognition of the work he does every day for free in violation of the Thirteenth Amendment. Hammond states that Texas is one of the few states which does not pay a viable wage for inmate labor. Instead, Texas has applied a "good time/work time compensation plan" in lieu of actual tangible tender. However, this is not meaningful compensation because it cannot be used to purchase any goods or services, nor does it shorten a prisoner's sentence. In fact, Hammond says, good time can be removed through various means. When a prisoner is released to parole or mandatory supervision, he is required to sign away all of his accrued good time or work time; this is not a voluntary relinquishment, but a

mandatory requirement imposed before an inmate can be released. If the prisoner violates the terms of his parole or mandatory supervision, the good time is generally not restored.

As a result, Hammond states that he is being subjected to a "payment system" designed to falsely enrich TDCJ through the use of a "false flat currency" in the form of good time and work time. Because good time and work time is "currency," TDCJ is in violation of the Constitutional prohibition against states making anything but gold or silver a tender in payment of debts.

Although the purpose of the TDCJ system is to pay inmates in good time or work time, such payment has no measurable value. Hammond states that slavery was abolished by the 13th Amendment; he acknowledges that the Thirteenth Amendment provides an exception "as punishment for crime whereof a person has been duly convicted," but states that no one in the TDCJ system has been "sentenced to slavery or involuntary servitude." After discussing the meaning of the term "slavery," Hammond states that he himself was not sentenced to slavery or involuntary servitude, but to "confinement and/or restitution," and TDCJ cannot change his pronounced sentence for its own gain.

Hammond states that inmates are routinely stripped of good time or work time as a violation of one or more rules, but these violations of rules are "unadjudicated and are a taking of property." This would be more obvious if the good time had an actual monetary value. Hammond again asserts that it is illegal for a government entity to seize the property of another without cause and due process.

Hammond states that the "good time/work time formula" is a scheme to enforce compliance in a "coordinated deception." He argues that he is subjected to "forced labor" in violation of federal law. Hammond states that inmates are assigned to work upon their arrival in TDCJ. If they refuse,

Hammond says, they are subjected to increasing punishments including minor and major disciplinary cases, deprivation of good time already earned, higher levels of confinement, and transfer to facilities far away from the prisoner's family. This means that the rate being "paid" to the inmate is reduced.

Hammond states that a prisoner receiving a 10–year sentence would accumulate flat (calendar) time, good time, and work time. After five years of flat time plus two-and-a-half years each of good time and work time, the inmate may be released on mandatory supervision; however, such release is now discretionary and some offenses do not qualify for release on mandatory supervision.

Furthermore, Hammond asserts that release on parole or mandatory supervision is not "liberty" because an individual on such release is still in the custody of the State. Mandatory supervision has published guidelines, but parole does not; instead, it is at the sole discretion of the Texas Board of Pardons and Paroles. Because both mandatory supervision and parole are discretionary, Hammond states that there is no value earned by good time or work time credits. Unlike money, there is nothing that can be purchased by good time, and these credits do not shorten the term of the sentence.

After discussing the fact that various inmate jobs require various levels of skill, including truck driving, plumbing, and electrical work, Hammond argues that TDCJ cannot have it both ways; the prison cannot say that good time is a valuable consideration but then say it has no value when asked to exchange it for other valuable considerations. Inmates cannot purchase items for the commissary or pay their medical co-pay with good time credits.

Hammond asks that the court order TDCJ to cease and desist from employing inmate labor without express written and voluntary consent. He further requests that all inmates be paid for their

work.

A federal court has the authority to dismiss a complaint in which the plaintiff is representing himself if the court determines that it lacks an arguable basis in law or fact. 28 U.S.C. § 1915(e)(2)(B)(i); *see Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

A prisoner does not have a constitutional right to a release before the expiration of a valid sentence. *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Furthermore, the U.S. Constitution does not guarantee an inmate good-time credit for satisfactory behavior while in prison. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, state laws may create a constitutional expectancy of early release. *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). In Texas, it is well established that only inmates who are eligible for mandatory supervision have a liberty interest in good-time credits and a constitutional expectancy of early release. *Id.* To establish a constitutional violation, Hammond must show that he has a constitutional expectancy of early release.

The primary issue in this case concerns whether or not Hammond has stated the denial of a constitutionally protected liberty interest. Prisoners are not wholly stripped of all constitutional protections when imprisoned. *Wolff*, 418 U.S. at 555. A prisoner's constitutional rights are set forth in the Due Process Clause of the Fourteenth Amendment. However, in disciplinary hearings,

prisoners are only entitled to due process guarantees when the hearing may result in sanctions that infringe on constitutionally protected interests. *Sandin v. Conner*, 515 U.S. 472, 483-4 (1995). These interests are generally limited to sanctions that affect the quantity of time served by a prisoner. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). Due process protections do not attach to ordinary prison disciplinary cases, but only those which serve to lengthen the inmate's sentence or exceed its expected parameters. *Sandin*, 515 U.S. at 484. Prison inmates who lose previously earned good time credits as a result of prison disciplinary convictions are entitled to procedural due process protections. *Wolff*, 418 U.S. at 555.

Under Texas law, a TDCJ inmate can become eligible for release in two ways: "The first is by parole and the second is under a mandatory supervised release program." *Id.* Only mandatory supervision may create a "constitutional expectancy" of early release. *Malchi*, 211 F.3d at 957. However, in the pending case, Hammond was convicted of aggravated sexual assault of a child in 2008 and is, therefore, ineligible for mandatory supervision. *See* TEX. GOV'T CODE § 508.149(a)(8)(stating an inmate may not be released to mandatory supervision if the inmate is serving a sentence for or has been previously convicted of a first degree felony under Section 22.021, Penal Code [Aggravated Sexual Assault]). Because Hammond is not eligible for mandatory supervision, he has no constitutional expectancy of early release and no liberty interest in any lost good time. *Malchi*, 211 F.3d at 957; *Madison*, 104 F.3d at 767-8;

For prisoners not eligible for mandatory supervision, good-time credits only apply toward eligibility for parole. TEX. GOV'T CODE ANN. § 498.003. It is well established that eligibility for parole is not a constitutionally protected interest. *See Madison*, 104 F.3d at 768. Because release on parole is entirely speculative, there is no constitutional expectancy of parole in Texas. *Id.*

A disciplinary action resulting in loss of good-time credits only affects eligibility for parole and, therefore, does not affect a constitutionally protected interest. Furthermore, the Fifth Circuit has ruled that if an inmate is not eligible for mandatory supervision, he "does not have a constitutional claim for which relief can be granted." *Arnold v. Cockrell*, 306 F.3d 277, 278 (5th Cir. 2002). Hammond complains that inmates are punished for refusing to work, and that the punishment can include the loss of good time credits. Hammond does not identify a disciplinary case in which he lost good time credits. (Docket Entry No. 1, p. 11). To the extent Hammond lost good time credit, he has not established a due process violation.

Hammond claims that he is seeking compensation for work performed in prison. Hammond's claim of involuntary servitude is frivolous. Section 1 of the Thirteenth Amendment to the United States Constitution reads as follows: "Neither slavery nor involuntary servitude, except as punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

The Thirteenth Amendment clearly did not totally abolish slavery and involuntary servitude. An exception was made for people convicted of crimes. The Fifth Circuit has clearly held that requiring inmates to work without compensation does not violate the Constitution nor constitute involuntary servitude. *Wendt v. Lynaugh*, 841 F.2d 619, 621 (5th Cir. 1988). The State maintains discretion to determine whether and under what circumstances inmates will be paid for their labor. *Wendt v. Lynaugh*, 841 F.2d 619, 621 (5th Cir. 1988).

The Fifth Circuit also emphasized that "inmates sentenced to incarceration cannot state a viable Thirteenth Amendment claim if the prison system requires them to work." *Ali v. Johnson*, 259 F.3d 317, 317 (5th Cir. 2001). Compelling an inmate to work without pay does not violate the

Constitution even if the inmate is not specifically sentenced to hard labor. *See Ali v. Johnson*, 259 F.3d 317, 318 (5th Cir. 2001); *Murray v. Miss. Dep't of Corr.*, 911 F.2d 1167, 1167 (5th Cir. 1990).

Inmates likewise do not have a basis for a claim under the Fair Labor Standards Act if they are forced to work without compensation. *Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006). Moreover, "[t]he refusal to work, by a group or even a single inmate, presents a serious threat to the orderly functioning of a prison. Any unjustified refusal to follow the established work regime is an invitation to sanctions." *Mikeska v. Collins*, 900 F.2d 833, 837 (5th Cir. 1990), modified, 928 F.2d 126 (5th Cir. 1991). The mere allegation that some prisoners are paid for work, while others are not, does not establish unlawful discrimination. *Id.*

On-line research reveals that Hammond was serving three concurrent forty-year sentences for three 2008 convictions for aggravated sexual assault of a child. (Cause Numbers 20,289-2008, 20,290-2008, and 20,291-2008). At the time he filed this complaint, Hammond had been duly convicted and sentenced by the state trial court. At the time he was required to work in the prison, he had not yet served his full sentence. He states no cognizable violation of the Thirteenth Amendment. Hammond has not shown that the defendants violated his rights by making him hold a prison job. Hammond has failed to support his 42 U.S.C. § 1983 action by showing that he was deprived of a right or interest secured by the Constitution and laws of the United States. *See Doe v. Rains Cnty. Ind. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).

Hammond asserts that failure to release a prisoner on his minimum expiration release date amounts to double jeopardy. (Docket Entry No. 1-1, p. 2). The Double Jeopardy Clause provides that no person shall be subject for the same offense twice to be put in jeopardy of life or limb. U.S. CONST., amend. V. The clause protects against a second punishment for the same offense after an

acquittal, a second prosecution for the same offense after a conviction, and multiple punishments for the same offense. *United States v. Gonzalez*, 76 F.3d 1339, 1343 (5th Cir. 1996).

Hammond has failed to show a double jeopardy violation. His contention that prisoners are held beyond their sentence expiration dates because of the operation of good time and work time is incorrect, and he has thus not shown that he or other prisoners have been subjected to multiple punishments for the same offense. Hammond received three 40-year sentences for aggravated sexual assault of a child on June 16, 2008. These sentences have not expired. His double jeopardy allegation is without merit.

The action filed by Benny J. Hammond (TDCJ-CID #1513422) lacks an arguable basis in law. His claims are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i). Hammond's motion to proceed without prepayment of filing fees, (Docket Entry No. 8), is granted. Hammond's motion for the appointment of counsel, (Docket Entry No. 2), is denied as moot. Any remaining pending motions are denied as moot.

The TDCJ-CID must deduct twenty percent of each deposit made to Hammond's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $350.00 is paid in full.

The Clerk will provide a copy of this order by regular mail, facsimile transmission, or e-mail to:

    (1)    the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin,

Texas, 78711, Fax: 512-936-2159;

(2)     the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and

(3)     the District Clerk for the Southern District of Texas, Attention: Manager of the Three-Strikes List.

SIGNED on March 31, 2017, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge